Opinion filed January 13,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00105-CR

                                                    __________

 

                           RAY
ZEPEDA SANCHEZ JR., Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                            On Appeal from the County
Criminal Court No. 5

                                                          Tarrant
County, Texas

                                                    Trial
Court Cause No. 1143730



 

                                            M E M O R A N
D U M   O P I N I O N

A jury found Ray Zepeda
Sanchez Jr. guilty of violating a protective order.  The trial court sentenced
him to ninety days confinement in the county jail.  We affirm. 

Susana Villarreal and appellant were married pursuant to
common law.  They had four children together.  In June 2006, the 325th District
Court entered a protective order in favor of Villarreal against appellant.  The
court found that family violence had occurred and was likely to occur again in
the future and that a protective order was in the best interest of Villarreal.  Pursuant
to the protective order, appellant was prohibited from committing family
violence on or against Villarreal, from communicating directly with Villarreal
in a threatening or harassing manner, from communicating a threat through any
other person to Villarreal, and from going to or within twenty feet of the
property line of the residence of Villarreal.

In October 2008, appellant was released from custody and his
family had a party for him at his sister’s house.  Appellant wanted their son to
attend the party.  Villarreal drove their son to appellant’s sister’s house.  While
there, appellant and Villarreal talked.  The next day, Villarreal noticed
appellant driving on the street in front of her house.  When she left to take
her daughter to school, appellant drove up behind her until he caught up to her
car, rolled down his window, and threatened her.  Appellant also sent
Villarreal several texts throughout the day.  Appellant talked to Villarreal’s
mother and threatened to hurt Villarreal.  That afternoon, Villarreal called
the police.  Appellant was charged with two counts of violation of a protective
order.  The information charged that appellant did: 

Intentionally or knowingly, in violation of an order of the 325th District Court of Tarrant County,
Texas, issued on the 19th day of June, 2006, in Cause Number 325-403560-06,
under authority of the Texas Family Code Chapter 85, commit an act of family
violence, namely a threat that reasonably placed Susana Villarreal, a member of
his family or household, in fear of imminent physical harm, bodily injury or
assault[, and]

 

Intentionally or knowingly, in violation of an order of the 325th District Court, of Tarrant County,
Texas, issued on the 19th day of June, 2006, in Cause Number 325-403560-06,
under authority of the Texas Family Code Chapter 85, commit an act of family
violence, namely communicating a threat through any person to- wit:  Patricia
Visilio,[1]
to Susana Villarreal, that reasonably placed Susana Villarreal, a member of the
defendant’s family or household, in fear of imminent physical harm, bodily
injury, or assault.

 

Appellant
pleaded not guilty and proceeded to a jury trial. 

Appellant challenges the factual sufficiency of the
evidence supporting his conviction for violation of a protective order as
alleged in both counts of the information.  We note at the outset of our
analysis that the Texas Court of Criminal Appeals has now held in Brooks v.
State, 323 S.W.3d 893 (Tex. Crim. App. 2010), that there is “no
meaningful distinction between the Jackson v. Virginia[2]
legal-sufficiency standard and the Clewis[3] factual-sufficiency standard”; that the Jackson v.
Virginia standard is the “only standard that a reviewing court should apply
in determining whether the evidence is sufficient to support each element of a
criminal offense that the State is required to prove beyond a reasonable doubt”;
and that “[a]ll other cases to the contrary, including Clewis, are
overruled.”  Brooks, 323 S.W.3d at 895, 902, 912 (footnotes added).  Accordingly,
a challenge to the factual sufficiency of the evidence is no longer viable.  We
also note that appellant did not have the benefit of the opinion in Brooks when
this case was briefed.  We will review appellant’s factual sufficiency challenge
under the legal sufficiency standard set forth in Jackson v. Virginia.  Under
this standard, we must review all of the evidence in the light most favorable
to the verdict and determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.  Jackson v.
Virginia, 443
U.S. 307; Brooks, 323 S.W.3d at 899.  

Under Chapter 85 of the Texas Family Code, a court may
issue a protective order when it finds that family violence has occurred and is
likely to occur in the future.  Tex.
Fam. Code Ann. § 85.001 (Vernon 2008).  A person commits an offense if,
in violation of an order issued under Chapter 85 of the Family Code, the person
knowingly and intentionally communicates directly with a protected individual
in a threatening or harassing manner or communicates a threat through any person
to a protected individual.  Tex. Penal
Code Ann. § 25.07(a)(2)(A), (B) (Vernon Supp. 2010).  

Villarreal testified that she dropped their son off at
appellant’s sister’s house the evening appellant was released from custody and
that she and appellant had a civil conversation.  They talked about the
protective order still being in effect and the fact that he could not come to
her house.  Villarreal testified that appellant told her that she needed to get
her boyfriend out of their house and then he would leave her alone.  She told
him that she would work on it but that she needed some time.  Villarreal
testified that she did not feel threatened during the conversation and left the
house thinking that everything was going to be okay.

However, the next day she noticed appellant drive by her
house in his dad’s black Cadillac Escalade. She testified that she was concerned
and that she waited to take their daughter to school.  When she noticed that he
was not passing her house anymore, she took their daughter to school.  Villarreal
testified that, when she turned onto Long Street, she saw appellant coming from
behind her.  She testified that she was scared and pulled her car to a complete
stop. Appellant pulled up beside her; he had his window down and told their daughter
to roll down her window.  Appellant yelled at Villarreal from his vehicle,
“That wetback better not be -- I better -- that wetback better not be here or
all hell was going to break loose, and all bets are off.”  Villarreal testified
that she was very scared and thought that he was going to “hit [her] car or do
something.  I really thought something bad was going to happen. . . . [R]ight then
in that minute.”  Villarreal testified that appellant also sent her five to
twelve text messages throughout the day.  She called the police after she
received a text that asked how it felt knowing that her “boyfriend or the
police can’t protect you.”  Villarreal also testified that she was scared enough
that she bought a handgun and rented a hotel room for a week; she was too
scared to be at her house.

A.S. testified that she was the daughter of appellant and
Villarreal.  She testified that she was present when appellant pulled up beside
her mother’s car.  A.S. testified that, when her mother saw appellant, she
gasped and put her hand over her chest and that her mother seemed very scared
at the time.  A.S. testified that she was not scared but that her mother
clearly was.  On cross-examination, A.S. stated that appellant did not threaten
Villarreal but, rather, just wanted someone out of the house.

 Patricia Vasillio testified that she is Villarreal’s
mother.  On the same day that appellant drove by Villarreal’s house and sent
her text messages, he also called Vasillio.  Vasillio testified that appellant
told her that he wanted to get back together with Villarreal and that she had
no business being with that “wetback” Jose.  Vasillio tried to convince
appellant to leave Villarreal alone.  She testified that appellant then stated:
 “Well, if she’s not going to be mine, she’s not going to be nobody else’s.”  Vasillio
testified that she took this to mean that appellant was going to harm
Villarreal.  However, Vasillio did not tell Villarreal because she did not want
to scare her.  Later, after Villarreal had called the police, Vasillio told the
police and Villarreal about her conversation with appellant.

Appellant argues that the State waived count two of the
information because the trial court’s docket sheet states that count two was waived. 
However, the record does not support this conclusion.  The State never waived
count two.  The jury was charged on both counts and returned a verdict of
guilty as charged in the information.  The trial court’s judgment states in the
heading of the document:  “Judgment & Sentence Count One.”  However, the
body of the judgment reiterates that the jury found appellant guilty as
charged in the information.  See Ex parte
Gray, 426 S.W.2d 241, 241 (Tex. Crim. App.
1968) (a document that contains the wrong title but has all essential elements
of a judgment of sentence will suffice as a judgment). 

Appellant contends that the evidence is insufficient
because the statements he made directly to Villarreal were threats against Villarreal’s
boyfriend, Jose, not Villarreal.  He further argues that, because the evidence
did not show that Jose was in the house at the time the threats were made,
Villarreal’s fear of imminent physical harm was not reasonable.  We disagree.  The
evidence showed that Villarreal was afraid that appellant was going to assault
her and that appellant had never even spoken to Jose.  Villarreal testified
that the threats were against her, not Jose.  Villarreal was scared enough to
buy a handgun and to stay in a hotel for a week.  A rational trier of fact
could have found the essential elements of the offense beyond a reasonable
doubt.  The evidence is sufficient to support the jury’s verdict as to count
one.

Regarding count two, appellant argues that the evidence
does not show that appellant intended for Vasillio to relay to Villarreal the
statements he made to Vasillio.  However, the record indicates that Villarreal
became aware of what appellant said to Vasillio.  Vasillio testified that
Villarreal had already called the police when she got home.  Vasillio told the
police and Villarreal what appellant had said to her on the phone.  Vasillio
testified that she believed that appellant intended to hurt Villarreal and that
he meant what he had said.  The evidence is sufficient to support the jury’s
verdict as to count two.  We overrule appellant’s issues on appeal. 

The judgment of the trial court is affirmed.

 

 

                                                                                    JIM
R. WRIGHT

                                                                                    CHIEF
JUSTICE

 

January 13, 2011

Do not publish. 
See Tex. R. App. P. 47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]We note that the name in the information is misspelled,
but appellant acknowledges that Visilio is idem sonans for Vasillio.  See
Escobar v. State, 578 S.W.2d 139, 140 (Tex. Crim. App. 1979).

 





                [2]Jackson v. Virginia, 443 U.S. 307 (1979).

 





                [3]Clewis v. State,
922 S.W.2d 126 (Tex. Crim. App. 1996).